Michael B. Marion, AZ Bar No. 035627
Matthew L. Bycer, AZ Bar No. 025391
**BYCER & MARION**
7220 N. 16th St., Suite H
Phoenix, AZ 85020
Tel: (602) 944-2277
michael@bycermarion.com
matt@bycermarion.com
*Attorneys for Defendant Temco Industrial, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mira Holdings, Inc., a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Temco Industrial, LLC,<br><br>Defendant. | Case No. 2:26-cv-03430-MTL<br><br>**DEFENDANT TEMCO INDUSTRIAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS II–V AND TO STRIKE IMPROPER THEORIES AND REMEDIES IN COUNT I**<br><br>(Assigned to the Hon. Michael T. Liburdi) |

Defendant Temco Industrial, LLC (“Temco”) submits its reply in support of its Motion to Dismiss (Dkt. 13, “Mot.”) and in response to the opposition of Plaintiff Mira Holdings, Inc. (“Mira”) (Dkt. 14, “Opposition” or “Opp.”).

Mira’s Opposition confirms the defects in its Complaint (Dkt. 1) that require dismissal of all counts other than Mira’s right to seek de novo review of the UDRP transfer under 15 U.S.C. § 1114(2)(D)(v). Count II identifies no statement that temco.com is “identical to, confusingly similar to, or dilutive of” a mark, no falsity, and no causation, as the opposition all but concedes (Opp. at 4). Count III seeks restitution for Mira’s own actions where it already pleads a contractual right. Counts IV and V rest on an unpleaded facts that “ICANN DNS records” are a document in which Mira’s rights are merged (Opp. at 10), when those records are third-party databases that Mira never possessed and Temco never “touched.” This case should be seen as the limited challenge to the UDRP decision, dismissing the rest.

## I. ARGUMENT

### A. Mira Does Not Defend Count I’s Remaining Theories or Count II’s Reliance on § 1125(d).

The opposition does not respond to the Motion’s challenges to Count I’s freestanding § 1125(a) theory, its § 1117(d) statutory-damages demand, or its § 1117(a) exceptional-case fee demand (Mot. at 7–8), or to Count II’s invocation of § 1125(d) as an affirmative claim against Temco (*id.* at 6). A court “may consider an argument conceded when a party fails to counter it.” *Prime Loyalty LLC v. GoDaddy Inc.*, No. CV-24-03359-PHX-JJT, 2025 U.S. Dist. LEXIS 124736, at *39 (D. Ariz. July 1, 2025) (quoting *Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 WL 10410091, at *4 (D. Ariz. Dec. 20, 2017)). Count I should be confined to the § 1114(2)(D)(v) declaration and the equitable relief that provision authorizes.

### B. Count II Still Identifies No Qualifying Misrepresentation and No Causation.

Mira does not dispute that § 1114(2)(D)(iv) requires a “knowing and material misrepresentation . . . that a domain name is identical to, confusingly similar to, or dilutive of a mark” that caused the transfer. *IFIXITUSA LLC v. iFixit Corp.*, No. CV-21-00887-PHX-

DGC, 2022 U.S. Dist. LEXIS 105137, at *15–16 (D. Ariz. June 13, 2022). It argues that the incorporated WIPO materials fill the gap. (Opp. at 3–4.) They cannot and do not.

1. <u>The representations Mira identifies concern intent, which the statute does not reach.</u>

The opposition identifies, for the first time, the representations Mira claims that underlies its Count II, namely that Temco "asserted that Mira had acquired and held the domain specifically to target Defendant's trademark, lacked any legitimate interest, and had registered and used the domain in bad faith." (Opp. at 3.) These assertions, that are not identified with any specificity in the Complaint, concerns Mira's intent or interests. These statements are not statements that temco.com is identical to, confusingly similar to, or dilutive of a mark. An alleged misrepresentation of intent is "insufficient to state a claim for relief for fraud in the domain dispute proceeding." *Dent v. Lotto Sport Italia S.p.A.*, No. CV-17-00651-PHX-ROS, 2018 U.S. Dist. LEXIS 23415, at *6 (D. Ariz. Feb. 12, 2018). The only contention of the right type in the incorporated decision is that the domain "is identical to Complainant's TEMCO trademark" (Compl. Ex. A at 3), and Mira does not allege that it was false. It could not as its own Complaint reproduces a live TEMCO registration owned by Temco. (Compl. ¶ 15.)

2. <u>Incorporation by reference cannot supply allegations the incorporated document does not contain.</u>

Temco does not ask the Court to assume the truth of the WIPO decision (*see* Opp. at 3–4); it asks the Court to read the Complaint. The paragraphs Mira cites (Opp. at 3 (citing Compl. ¶¶ 6, 7, 26, 32)) say only that Temco "claim[ed] trademark rights" and made "baseless allegations" (Compl. ¶¶ 6–7), but these are conclusions "cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). Mira's reliance on the UDRP decision still does not identify which Temco statement was false, why, or how Temco knew it.

The opposition confirms the gap. It offers to "restate Count II to identify the representations described in the incorporated UDRP submissions and decision, explain why

they were allegedly false, and plead how they caused the transfer." (Opp. at 4.) Those are the elements of the claim, and the complaint must allege these elements.

3. Mira pleads no causation.

The transfer must also be "based on" the misrepresentation. *IFIXITUSA*, 2022 U.S. Dist. LEXIS 105137, at *16. Mira alleges only that the registrar locked the domain "in accordance with the UDRP" and transferred it after the panel's decision (Compl. ¶¶ 18–19). This is merely the sequence of events in an UDRP proceeding, but not causation. Nor does the incorporated decision supply the link as the panel's identity finding rested on its own "relatively straightforward comparison" of mark and domain, and its bad-faith finding on a broker's email and Mira's own statements. (Compl. Ex. A at 6, 8–9.) Count II should be dismissed, and any leave confined to an identified statement concerning identity, confusing similarity, or dilution, with facts showing falsity, knowledge, and causation.

**C. Count III Fails Independently, Regardless of Claimed "Alternate Pleading"**

Mira defends Count III as a hedge in case Temco prevails on its challenges to Mira's "federal statutory theories and damages remedies." (Opp. at 5.) Alternative pleading permits inconsistent theories; it does not excuse the elements of each.

1. Mira pleads, and pursues, the legal remedy whose absence Count III requires.

Unjust enrichment requires "the absence of a legal remedy," *Trustmark Ins. Co. v. Bank One, Ariz., N.A.*, 202 Ariz. 535, 541 ¶ 31, 48 P.3d 485, 491 (Ct. App. 2002). Mira pleads that it has a remedy against Temco, that § 1114(2)(D)(v) supplies "a cause of action for an injunction returning the domain name." (*See* Compl. ¶¶ 36, 39, 45.) Having pleaded that in paragraph 36, Mira cannot plead in paragraph 52 that "[t]here is no other legal remedy available." It has pleaded itself out of Count III.

Mira's own authorities only permit an alternative equitable claim "where the availability or scope of another remedy remains unresolved," where the plaintiff "would have no other remedy . . . if the contract was found invalid." (Opp. at 5.) Nothing is unresolved here. Temco has not challenged the § 1114(2)(D)(v) claim, and a framework's refusal to award the damages

a plaintiff wants is not the absence of a legal remedy. Where a specific contract "governs the relationship of the parties, the doctrine of unjust enrichment has no application," *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976), and a statute that supplies the remedy for this very injury should be treated no differently.

2. Mira pleads no conduct making Temco's retention unjust.

Disputing the premises of the WIPO findings (Opp. at 5) is the office of Count I. Unjust enrichment "must rest not only in the loss to the [plaintiff], but also in the conduct of the [defendant]," which must be "improper, deceitful, or misleading." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 319–20 ¶¶ 14, 17, 283 P.3d 45, 50–51 (Ct. App. 2012). The opposition identifies only that Temco "received Temco.com" and that Mira "lost ownership and use" of it. (Opp. at 4–5.) That describes a transfer, not misconduct; "the mere receipt of a benefit is insufficient," *SinglePoint Direct Solar LLC v. Curiel*, No. CV-21-1076-PHX-JAT, 2022 U.S. Dist. LEXIS 19880, at *49 (D. Ariz. Feb. 3, 2022) (quoting *Freeman v. Sorchych*, 226 Ariz. 242, 251–52 ¶ 27, 245 P.3d 927, 936–37 (Ct. App. 2011)); and Mira conferred nothing on Temco, *see id.* (dismissing claim absent facts "showing that Plaintiffs directly conferred any benefit"). This Court dismissed the same claim in a post-UDRP case the opposition ignores because the plaintiff had "not plead a claim that plausibly asserts that the transfer of the domain is not justified under the law." *Smith v. Airbnb, Inc.*, No. CV-23-02541-PHX-SMM, 2024 U.S. Dist. LEXIS 229449, at *14 (D. Ariz. Dec. 18, 2024). Mira never challenged *Smith*'s conclusion that a UDRP proceeding is a justification under the law, defeating an unjust enrichment claim.

Nonetheless, Mira's own allegations defeat the required connection between Temco's alleged enrichment and Mira's alleged impoverishment. When Mira filed the first federal complaint, it alleged that temco.com had not yet been transferred, that the domain remained locked and was merely at risk of transfer, and that the filing was intended to prevent the anticipated transfer and secure reactivation of the domain. *Mira Holdings, Inc. v. Temco Industrial, LLC*, No. 2:26-cv-00362-JJT, Dkt. 1 (D. Ariz.), ¶ 6. The transfer therefore did not

occur while Mira's action remained pending. Instead, Mira failed to serve Temco, disregarded the Court's Rule 4(m) notice, and allowed the action to be dismissed without prejudice. Only after Mira's failure to prosecute removed the impediment created by its federal filing could the transfer occur. Thus, under Mira's own chronology, Temco's receipt of the domain was not the result of a benefit wrongfully taken from Mira by Temco but rather the consequence of Mira's failure to preserve the very judicial protection it invoked. Mira's unjust enrichment claim based on the transfer of its domain could only be pleaded after Mira's own failure to stop transfer of the domain. Mira cannot manufacture an unjust-enrichment claim by allowing its own action to be dismissed and then characterizing the consequence of that dismissal as an uncompensated benefit obtained at its expense.

**D. Counts IV and V Fail Because the "Document" Mira Identifies Is a Third-Party Database That Mira Never Possessed and Temco Never Touched.**

Mira does not dispute that Arizona confines both torts to tangible chattels and to "intangible property that is merged in, or identified with, some document." *Miller v. Hehlen*, 209 Ariz. 462, 472, 104 P.3d 193, ¶ 35 (Ct. App. 2005); *see* Opp. at 6. Mira fails to identity any such document pleaded in its Complaint, instead providing the sole argument in its Opposition that "ownership of a domain name is clearly merged with ICANN DNS records." (*Id.* at 10.) This unpleaded argument fails.

1. <u>Merger is a question of law that the Complaint does not plead and mere attorney argument cannot supply.</u>

The Complaint alleges only that Temco "caused a domain name registrar to modify ICANN records." (Compl. ¶ 65.) More fundamentally, merger is not the "factual assertion" Mira calls it. (Opp. at 10.) Rights are merged in a document "when by the appropriate rule of law, the right to the immediate possession of a chattel and the power to acquire such possession is represented by a document." (Opp. at 7 (quoting Restatement (Second) of Torts § 242 cmt. a).) The Ninth Circuit, in the decision Mira itself invokes, treated whether domain names are

property to which conversion applies as "a question of law rather than of adjudicative fact." *Kremen v. Cohen*, 337 F.3d 1024, 1033 n.10 (9th Cir. 2003).

2. The registration architecture shows that the relevant records are third-party databases, not documents embodying Mira's rights.

Despite arguing over unpleaded "ICANN DNS records," courts have explained that there is no single "ICANN record." ICANN "oversees numerous third-party registries," *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 775 (11th Cir. 2015), and the ".com" registry operates under contracts with ICANN and the registrars. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 619 & n.24 (E.D. Va. 2003). The Ninth Circuit identifies "three primary actors": "registries," which "operate a database (or 'registry') for all domain names within the scope of their authority"; "registrars," which "register domain names with registries on behalf of those who own the names" and "maintain an ownership record for each domain name"; and "registrants," who "interact with the registrars, who in turn interact with the registries." *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010); *accord GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011).

The registry's database does not even identify the registrant. For each ".com" name it holds four items: the name, its name servers' IP addresses, the registrar, and the expiration date. *GlobalSantaFe*, 250 F. Supp. 2d at 619. It "does not include information identifying who the individual registrant for a domain name is"; "[o]nly the registrar maintains that information." *Id.* at 619 n.25. Registrars "initiate virtually all changes to the Registry Database," and "[t]he registry's role is almost entirely passive," *id.* at 620. Record and right can even diverge: a name pulled from the zone file "is rendered 'inactive' but remains registered." *Id.* at 621.

That architecture defeats Mira's theory. The paradigm merged documents are "a stock certificate or an insurance policy," *Hao v. GoDaddy.com LLC*, No. CV-22-01709-PHX-DLR, 2023 U.S. Dist. LEXIS 72042, at *3 (D. Ariz. Apr. 25, 2023), where the holder of the instruments holds the right. Mira never possessed the Registry Database, the zone file, or the registrar's records; the registry that possesses its database is not the owner of the names it lists;

and that database does not name Mira at all. A database kept by one company, changed on the commands of another, and silent as to the registrant does not represent the registrant's "right to the immediate possession" of anything; it is not a "document that has its own value in the same sense as a stock certificate or insurance policy." *SinglePoint*, 2022 U.S. Dist. LEXIS 19880, at *46 (quoting *Swisher Hygiene Franchise Corp. v. Clawson*, No. CV-15-1331-PHX-DJH, 2017 U.S. Dist. LEXIS 229066, 2017 WL 11247886, at *9 (D. Ariz. Sept. 11, 2017)); *see id.* at *48 (dismissing conversion claim not tied "to a document that has independent value").

3. <u>Property vocabulary, *Kremen*, and *McAlister* do not displace the merger requirement.</u>

Merely because courts describe registrants as "owning" domain names, this does not help Mira. *Office Depot*, 596 F.3d at 699; *GoPets*, 657 F.3d at 1031–32. Intangible property is still property, and Arizona asks whether it is merged in a document for purposes of these torts. This Court has rejected *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) as "inapposite because Arizona, unlike California, follows the Restatement's strict merger requirement." The Ninth Circuit held the DNS a document only under a "minimal" California requirement of "some connection to a document or tangible object—not representation of the owner's intangible interest in the strict Restatement sense," finding that the DNS "bears some relation" to the domain name. 337 F.3d at 1033–34. *Kremen* itself recognized that under the strict rule, while "it's often possible to dream up some document the intangible is connected to in some fashion, it's seldom one that represents the owner's property interest." *Id.* at 1033. Arizona follows the strict rule, *Hao*, 2023 U.S. Dist. LEXIS 72042, at *4, and insufficient under *Kremen*.

Nor does *McAlister* change the analysis. Its holding that "electronic touching may suffice" concerns how interference occurs, not what may be interfered with. This Court reaffirmed already that the object must be "intangible property that is merged in, or identified with, some document." *Prime Loyalty*, 2025 U.S. Dist. LEXIS 124736, at *50–51 (quoting *McAlister v. Loeb & Loeb, LLP*, No. 1 CA-CV 23-0212, 2024 Ariz. App. Unpub. LEXIS 94, ¶¶ 40–41 (Ct. App. Feb. 1, 2024)). That *Hao* and *ENS Labs Ltd. v. GoDaddy Inc.*, No. CV-22-

01494-PHX-JJT, 2023 U.S. Dist. LEXIS 128492, at *22 (D. Ariz. July 24, 2023) predate *McAlister* (Opp. at 9) is immaterial because *McAlister* left the object requirement untouched. And Mira cannot distinguish *ENS Labs* on the ground that its plaintiffs did not allege merger (Opp. at 9–10). But Mira does not allege merger either. It argues it.

4. *Prime Loyalty* was a suit against the registrar enterprise that controlled the records; Temco is not a registrar.

*Prime Loyalty* does not hold that every domain transfer is a trespass to chattels. It was a suit against the registrar enterprise itself. Those defendants, GoDaddy, LLC and 123-Reg "are domain name registrars," and the plaintiffs alleged that the registrar "unilaterally revoked the domain names" 2025 U.S. Dist. LEXIS 124736, at *3, *5. The court's reasoning tracked those allegations that trespass would occur if a document embodying the registrants' rights "was unlawfully electronically touched by Defendants." *Id.* at *51–52. No conversion claim was asserted in *Prime Loyalty*, so it offers nothing at all for Count IV.

However, none of that fits here. Temco is not a registrar or registry, and it is not alleged to have accessed any registration system, possessed any record, or modified any entry. The only actor alleged to have touched a record is "a domain name registrar" (Compl. ¶ 65), and the domain was transferred "by the registrar, GoDaddy.com" (*id.* ¶ 19) and not, as the opposition now says, by "ICANN" at Temco's inducement (Opp. at 10). Temco filed a UDRP complaint (Compl. ¶ 17), and the allegation that the registrar acted "based on instructions by the Defendant" after the panel ruled (*id.* ¶ 19) describes a prevailing party seeking implementation of a panel order, not a touching of the registrar's system. Tellingly, the *Prime Loyalty* plaintiffs faulted the registrar for not doing what Temco did: rather than "bring a legal action to attempt to recover the names," it had "abused its position as a registrar." 2025 U.S. Dist. LEXIS 124736, at *42 (quoting complaint). Pursuing the legal process is not "contact[ing] another's computer network via spam emails or search-robot software." (Opp. at 7 (quoting *McAlister*).)

Counts IV and V should be dismissed.

**E. The Punitive-Damages Demand Should Be Dismissed Under Rule 12(b)(6).**

Mira objects that Rule 12(f) does not reach requested relief (Opp. at 11), but the Motion also sought dismissal under Rule 12(b)(6) (Mot. at 14), and the demand, pleaded only in the tort counts (Compl. ¶¶ 61, 70), falls with them. Independently, Mira alleges only that Temco "knew, or should have known" that Mira's use was not infringing. (*Id.* ¶¶ 59–60, 68–69.) The opposition recasts that allegation as "despite knowing" (Opp. at 11), but these factual allegations are not in the Complaint. Mira's "should have known" allegation pleads negligence, not the "evil mind" Arizona requires. *See Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 723 P.2d 675 (1986). Invoking the UDRP and prevailing before a three-member panel (Compl. Ex. A at 2, 10) is at least as consistent with good-faith enforcement of registered marks as with malice, and a court "cannot infer that [a defendant] acted with improper purpose where it is equally possible" that it acted "to advance [its] own economic interests." *SinglePoint*, 2022 U.S. Dist. LEXIS 19880, at *45 (intentional-interference claim). Correcting the "against Plaintiff" error (Opp. at 11 n.1) cures none of this.

**F. Leave to Amend Counts III, IV, and V Should Be Denied as Futile.**

Mira requests leave to amend any deficient claim (Opp. at 11) but identifies no fact it could add to Counts III through V. Leave to amend is properly denied where an amendment cannot overcome legal defect. *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011)  The defects in Mira's complaint stem from Mira's pleaded statutory remedy, the structure of the domain-name system, and Arizona's merger rule, rather than missing detail. Similar cases in this Court have likewise denied leave to amend legally deficient claims. *See Smith*, 2024 U.S. Dist. LEXIS 229449 (denying leave as to unjust-enrichment claim); *Hao*, 2023 U.S. Dist. LEXIS 72042, at *6 (denying leave where plaintiff had not "identified in his response brief any additional factual allegations he could make").

**II. CONCLUSION**

For these reasons and those in the Motion, Temco respectfully requests that the Court (1) dismiss Counts II through V, with Counts III through V dismissed without leave to amend; (2) dismiss the § 1125(a) theory and the § 1117(d), § 1117(a), and punitive-

damages demands; and (3) permit Count I to proceed only as a claim under 15 U.S.C. § 1114(2)(D)(v) for a declaration whether Mira's registration or use of temco.com violated § 1125(d), together with any statutory equitable relief that follows.

DATED this 23rd day of September 2026.

**BYCER & MARION**

By: */s/Michael B. Marion*
Michael B. Marion, AZ Bar No. 035627
Matthew L. Bycer, AZ Bar No. 025391
7220 N. 16th St., Suite H
Phoenix, AZ 85020
(602) 944-2277
michael@bycermarion.com
matt@bycermarion.com
*Attorneys for Defendant Temco Industrial, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 23rd day of September 2026, a correct copy of the foregoing motion was electronically transmitted for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants of record in this matter.

*/s/ Michael B. Marion*